Thank you. May it please the Court. Good morning. I am Norman Reese. I represent the appellants in this matter, Christopher Hayes and Hayes Management Services. And I believe that maybe the best way to proceed this morning is to first talk about the issue that presents itself in this appeal about personal liability under Title VII. As we know, in the Ninth Circuit, the Miller case from 1993, ever since that case was decided, there is no individual liability under Title VII. Ms. Carbajal claimed that she never attempted to make a direct claim against Mr. Hayes under Title VII or under the Idaho Human Rights Act. But her own filings belie that contention, and let me share with you how that is so. In her very last pleading, it was a second amended complaint. You'll find that in the excerpts of record at pages 589 through 603. That clearly shows that she asserted a personal liability against Mr. Hayes without even resorting to an alter ego theory. Mr. Hayes was also identified as a separate party defendant. That's in the excerpts of record at 590. And the second amended complaint also identified all parties and then lumped them together, including Mr. Hayes individually, referring to them collectively as the defendants. And you'll see that at page 590 in the excerpts of record as well. She did so in her Title VII allegations. Now, clearly to us that shows she brought a Title VII action for direct liability against Mr. Hayes as an individual. And the only bases in her last pleading, her second amended complaint, for damages against Mr. Hayes were in the two counts that pertain to Title VII and the corresponding Idaho Human Rights Act violation. None of the other counts of that pleading sought to impose direct liability. They were derivative liability causes of action. For example, well, count three was only against the other defendant, Hayes Tax. Count four did assert an alter ego claim against Mr. Hayes. And count five sought to impose a constructive trust. So again, the only source of damages in the second amended complaint were the first two counts which pertained to Title VII. It's noteworthy to see that Ms. Carvalho could have sought damages under additional theories had she chose to do so. Wrongful termination, infliction of emotional distress, civil assault, civil battery. But she chose not to do so. And so she presented her case, she brought her case solely as a Title VII, and she presented her case to the jury solely as a Title VII. Important to this issue likewise is Ms. Carvalho's allegation that her employer was Hayes Management Services, not Mr. Hayes. And that was the only proper basis for her allegations of the Title VII liability. Now, even if individual liability were available under Title VII, which it is not, as we pointed out in our briefing, the complaint against Mr. Hayes was not brought until well after the 90 days following the right to sue letter. But I really do think it boils down to the fact that under Title VII, it's only the employer that can have direct liability. Counselor, can I ask a question that kind of stems from what you've been talking about? Can you cite us to any authority that would show that the district court's orders with respect to numerosity and the alter ego were terminating sanctions? Yes. What authority can you cite? Well, not so much authority, but we understand they were terminating sanctions because they decided the issue and took it from the jury and – And I understand your position. I'm asking whether you have any case law or other authority that would back up what you're saying. I don't. Okay. I don't. The problem with the Title VII with the individual liability that they asserted under Title VII is, again, there is no personal liability. And cases are very clear that you cannot use alter ego to assert personal liability under Title VII. We cited to this panel several cases from other federal circuits that clearly reject that approach. I believe it was the 11th, 10th, and the 8th circuits. And we also pointed out that the same district judge here, in another matter, reviewing the Miller case from the 9th Circuit, indicated that he did not feel the 9th Circuit would recognize the alter ego theory of Title VII liability. Ms. Carvajal cited to you in her briefing several cases to support her argument to the contrary. But, in fact, if you look at them carefully, many of them, most of them, support our position and, in fact, undercut Ms. Carvajal's position. The conduct, and the key in this case is to bear in mind that the conduct for which the individual liability is being asserted had nothing to do with the factual basis of the Title VII claims. Again, the district court so ruled, and it's clear in this case that Mr. Hayes did not use the corporate structure to perpetrate what Ms. Carvajal alleged happened here, that formed the basis for Title VII allegations. In fact, she admits, you'll find this at her brief at page 44, her appellate brief, she admits that individual liability was asserted against Mr. Hayes only because of what she calls bad acts committed in this litigation. And that, in our view, is fatal to Title VII liability under altered ego. It was imposed for a discovery issue, not the facts that underlie the Title VII claims. The district court acknowledged as much. We cited to you the case of North American Watch Corporation. It's a 1986 case out of the Ninth Circuit. We believe that with that discovery issue that it's a peripheral matter, certainly not warranting terminal sanctions. Can I ask you, though, wasn't the discovery issue that she was trying to factually discover what was happening with the corporate form, and it was the failure of the defendant to comply with those discovery requests that led to the trial court's conclusion? Well, the thing to bear in mind on that is it was a two-page document that was discovered, inadvertently omitted from prior discovery. It was discovered several weeks prior to the trial. Ms. Carbajal's attorneys asked us to review once more and check for any documents that would relate to the numerosity issue, and we did. And we found a two-page document. I'm not talking about those documents. I'm talking about the discovery she sought with respect to the sale of the corporation. Oh, to the sale of the corporation, yes. Well, the thing to bear in mind on the sale of the corporation, Your Honor, is that first you have to look at what was asked versus what was not asked. Now, Ms. Carbajal asked for documents pertaining to the sale, any sale, between Hayes Management Services and Hayes Tax. Now, the only thing between those two entities was a sale of Hayes Management's goodwill, its corporate goodwill, client lists, and some hard assets for the sum of $100,000. Did you respond in that way when the discovery order was made, or did you fail to respond? Well, when we responded, we provided everything that was within the call of the discovery request. It asked for any documents pertaining to a transaction between Hayes Management Services and Hayes Tax. Now, the discovery issue arose when Hayes Tax was added as a defendant, and then Ms. Carbajal did some discovery requests to Hayes Tax. At that time, she found a document whereby Chris Hayes had transferred or agreed to transfer his personal professional goodwill to Hayes Tax, not to Hayes Management. His professional personal goodwill was always his asset. It never belonged. It was never an asset of Hayes Management. And so the discovery request that we had answered asked for documents from Hayes Management to Hayes Tax. And we provided everything within the call of that question. Now, when Ms. Carbajal found this other document that was not within the scope of that discovery request, she accused Hayes Management and Hayes of withholding discoverable documents. We pointed out to her that we answered everything within the call of the discovery request and invited her to submit a revised discovery request, broadening the scope of the request, and we would provide her with whatever that would entail. Rather than do so, her counsel chose to spend over 100 hours preparing a big motion for terminating sanctions, some 32 documents in relation to that motion, and then proceeded and convinced the court to apply terminating sanctions for that document. And again, you're using the term terminating to mean closure of an issue versus terminating the case. Correct. And you already agreed you have no case law authority for your position. Is that correct? No case law authority of which I'm aware that defines a terminating sanction.  Yes. Now, again, this transaction, there was no transfer in fraud of creditors here. And it's important to understand, because I'm not sure that the district court understood what happened here. Mr. Hayes' personal professional goodwill was never an asset of Hayes' management. The U.S. Tax Court in several cases has held that that's the case. An individual's personal professional goodwill remains his asset, and it's not the asset of the entity for which he or she works. Unless that individual transferred it to that entity, or there is a contract between the two that puts restrictions on that individual's use of his personal professional goodwill. Since your timing is running down, let me ask you, what authority can you cite that the 90-day filing requirement is jurisdictional? Sure. Our authority that we cite on that, and again, this is the context of, you know, we really think that it comes down to our alter ego. I get that. I want to know in what cases you feel that the 90-day filing requirement is jurisdictional, because that's what you assert. Yes, yes. It's sort of like arguing an alternative here. If we're going to say, okay, alter ego aside, if Carbajal is contending that she can assert direct liability, and we think she did. If you look at the pleading, if you look at the complaint, I think it's paragraph 60. She says, allegations common to all counts. And right there, she says alter ego, or she says, hey, this would be held individually liable. Now, the authority that we cite for that is the Baldwin County Welcome Center case. That's a U.S. Supreme Court case from 1984. Are you responding by 90-day filing requirement question, or are you going back to the alter ego? Yes. No, this is the 90-day filing. Okay. 90-day filing, yes. And the key quote from Baldwin, Your Honor, is this. It says, procedural requirements established by Congress for gaining access to the federal courts, that's what we believe is our 90-day phrase, are not to be disregarded by courts out of a vague sympathy for particular litigants. If you look at Fort Bend County, a Supreme Court decision from 2019. Now, to be sure, the issue in that case was whether the 180-day charge filing requirement was jurisdictional. And the court says, no, that's a processing rule, not a jurisdictional prescription. But when the Supreme Court went through its analysis, it said that the 90-day filing rule is part of the, quote, jurisdictional provision of Title VII. Mr. Reese, you have less than two minutes left. Yes. Do you want to save that for rebuttal or do you want to keep going? I think I'll save it for rebuttal. Very well, sir. And, Mr. Davis, any other questions on these matters that the panel would like to ask? When you come up for rebuttal, we can address those. Okay. All right. Very good. Thank you. Thank you. All right. Ms. Ulrich, please. Good morning. Good morning. May it please the court. My name is Amanda Ulrich, and I am here today on behalf of appellee Angie Carbajal. And I think the first thing to remember as this court is examining this appeal is that the parties have lived with this case for years, and so did the district court. The district court is intimately familiar with what occurred, was able to make judgments about credibility in discovery at trial because of that time the court spent with this case. And that's why it's important to consider that the standard of review on appeal here is, for the most part, an abuse of discretion standard. And the record is very clear that everything the district court did in this case was actually incredibly measured. During the course of this case, there were multiple instances of misconduct and discovery. And though we did ask for terminating sanctions on, I think, at least two occasions, the court went through the analysis that's required for a terminating sanction that requires a nexus between the acts that are at issue and the merits of the case. And the court determined that, in the first instance, there was not enough of a nexus between the fraudulent transfer and the hiding of documents related to that transfer and sale of the business and the Title VII claims. So there, the court showed restraint, did the proper analysis, and went through the Anheuser-Busch factors as well, by the way. So when the appellants assert that the court did not consider lesser sanctions, that's exactly what the district court did. The district court noted that terminating sanctions had been requested and then considered lesser sanctions. In the case of the issue with the hiding of the documents and discovery and misrepresentations to the court and to Carbajal, the court chose the lesser sanction of the alter ego liability finding on behalf of Mr. Hayes, as well as the constructive trust. And then later on in the case, when it was discovered yet again that Hayes Management Services had withheld documents in discovery and was caught, the court again used restraint and, instead of applying terminating sanctions, considered a nexus. And in that case, there was a nexus between the hiding of the document and one of the issues that went to the merits of the case, and that was the Title VII numerosity issue. But again, rather than apply terminating sanctions, which it could have done in that instance because of that nexus, the court exercised restraint and said, I'm only going to apply sanctions in the sense that the numerosity requirement is going to be deemed met. Because we've had these issues with discovery, there are multiple issues, and we just don't know what else is out there at this point and what hasn't been disclosed. On top of the clear violation of the duty for the defendants to provide what was asked for in discovery and the fact that they had made false representations about whether that document existed. So again, in that instance, the court exercised restraint, looked at the specific situation, and applied a sanction appropriate to that particular situation. Going back to the alter ego liability, how do you respond to opposing counsel's argument that the scope of the discovery was limited to the entities versus seeking it personally? Sure. And that's just completely not true. If you look at the court's, I think it's a 51-page decision on that issue, the court goes through specific elements, or I should say there's some particular interrogatories and requests for production the court mentions. And it identifies specific documents that were absolutely responsive to the request. It wasn't just one request that said, provide all information or documentation regarding the sale of HMS. There were specific targeted interrogatories and requests for production, such as identify any discussion or communication regarding negotiation of possible sale of HMS. Right? So those sorts of questions, which are much more targeted than that broad question counsel asserted was asked. And the problem with their position is it is obvious on the face of, for example, the intent to sell document, which we had to get from HTA, Hays Tax and Accounting, because HMS and Hays wouldn't give it to us and said it didn't exist. It's clear on the face of that document that that document was responsive and completely on point to what was asked. And there's multiple instances. It's not just that document. It's numerous other documents associated with the purchase and sale. So when your opposing counsel says that the discovery request was directed to X-Corp in terms of what X-Corp did with Y-Corp, that's not the whole story. There's just a whole lot more than you think the record substantiates that, right? Correct, yes. There is much more detail there. And the request, undoubtedly, as the district court noted, sought the information that was withheld. And it became clear when we did obtain those documents that they were absolutely responsive and that there had been intentional. This wasn't one issue where they responded in discovery it didn't exist. We repeatedly asked, are you sure? There has to be something else. This doesn't make sense. And we were not only repeatedly told, no, nothing else exists, we're in some cases told that, for example, at the hearing on that issue, defense counsel said, oh, Mr. Hayes forgot that that document existed. Well, it's a pretty significant document. And for him to say that he forgot it existed, especially when they provided it to the court in camera, it belies belief. So I think in that instance the sanction on the alter ego was completely appropriate and completely on point to what the issue was. So I can get a sense of how long this has gone on. How long has this case actually been in litigation? So Ms. Carbajal was terminated in, I think it was late 2017. And, of course, the administrative process happened in between. And then this case was filed, I believe, in 2019. So we have been living with it for years and years. And it's been a lot of litigation, obviously. There's been many motions that were filed due to some of the actions by defendants in this case. And I have to say, quite frankly, many of them do not seem to be supported by the law or the facts. And they can represent whatever facts or law they want, obviously. But the bottom line is, when you look at the record and when you look at the cases, the support for what they're saying those facts are or what those cases say is simply not there. So I would invite the Court, and I'm sure the Court's well aware and has already reviewed the briefing, but there's multiple instances of that. For example, I believe on the IME issue, where defendants had sought a motion to compel Ms. Carbajal to undergo a psychosexual exam, as an IME in this case, which is something that's reserved for convicted sex offenders. In that instance, the Court obviously denied that request and said that it could not find any authority allowing a psychosexual exam in a civil case for sexual harassment and that it bordered on being harassing and abusive. Yet, how it's presented in the briefing here to this Court is that the Court said they couldn't find any authority for IMEs in a Title VII sexual harassment case. That's simply not true. That's not what the Court said. The Court specifically drew a line between a psychosexual exam and an IME in a Title VII case involving more than garden-variety emotional distress allegations. And in federal court, there's no bar to such an exam, is there? There's no bar to an exam for an IME on… Title VII situation. No, no. And in fact, there are cases where courts have ordered it under Rule 35. But the problem with the type of exam that they had asked for is that they were trying to use it, I think, number one, to harass plaintiff, quite frankly, but also to try to assert that they were going to prove that the conduct was welcome through the exam somehow. And that's what the district court was saying was something that was not recognized and, in fact, not allowable under Title VII law. Because the way that you prove welcomeness or unwelcomeness under Title VII law is by the conduct of the plaintiff, not by an IME or some kind of other exam. So I think it's important to recognize those distinctions and really kind of drill down on what the facts actually are versus what has been represented. I think I will briefly just address, since I think this kind of featured strongly in Appellant's argument, is just the alter ego issue. I think it's clear that plaintiff did not bring a Title VII claim directly against Mr. Hayes, nor could she have. There's a reason for that. You cannot bring a Title VII claim or a claim under the Idaho Human Rights Act directly against an individual. It only applies to employers. And so that was intentional on our part, and the only reason Mr. Hayes even became personally involved in all of this was because of his conduct during the litigation, where he made an effort to basically zero out HMS, and we figured it out. How did you figure it out? I'm just curious. How did you learn about that? Sure. So what happened was our client had been hearing rumors that this had gone on, and so we reached out to opposing counsel to ask, hey, we're hearing about this. What's going on with this? Was there a sale? And we're initially told, oh, I'm not sure. I don't really know much about it, when in fact this particular legal counsel was intimately involved in it. We asked for a copy of the document that was the transaction, and we were given only one document, and it was the purchase and sale agreement for the $100,000 versus the $400,000, which then caused us to kind of have to go down this route of, well, we need to get an expert to figure out really how much this business was worth. Was it worth more than $100,000? All of those sorts of things. And, of course, while we were doing that, we had to see what we could find about the negotiations that happened, what the intent was as far as the purchase and sale price, any other offers that were made, all of those sorts of things. And so I guess suffice it to say the issue of the sale became a big issue in the end, and that's kind of what led to all the discovery and our motion. Did you just say that what you thought happened was a fraudulent conveyance, basically? Correct. Correct, yeah. Yes, exactly. And, in fact, we had been concerned about the $100,000 even from the transaction being gone by the time we got to a judgment to be able to collect. And, essentially, the representations that were made by a defendant's counsel to the court were, well, that money is for my fees, and so we're using it for that. And then by the time we got a decision on the motion for sanctions, the monetary part of it, over that particular issue, they've refused to pay those sanctions. They still haven't paid it to this day. We've attempted to collect on both that and the judgment. The bank account that we tried to collect on has been zeroed out. So it's been a long slog. It's been very frustrating, quite frankly. Did you report Judge Windmill? Yes, correct. Correct. Let's see. And I think as far as some of the other issues, one of the issues that they had raised in their briefing is that the court could not consider their prior conduct with the other sanctions when examining what the court would do with sanctions decisions later on. And the case law is clear. I think it's U.S. v. Rodriguez. It's a Ninth Circuit case that states that a court can absolutely consider the totality of the circumstances in a case when deciding whether or not to issue sanctions. And so that was entirely appropriate in this case and I think necessary because to understand what went on in this case, you have to have the context of the whole and everything that happened to that point. How much are the sanctions that have not been paid at this point? I think they were originally something like mid $30,000, but with the interest and penalty because they were found in contempt. Judge Windmill found them in contempt and issued a $100 a day penalty on top of that. So my guess is at this point there will probably be between $60,000 and $70,000 at this point. Because none has been paid? No, not on that particular sanction. The only payment that has been made was on the attorneys' fees over the IME issue. That was like $4,000 or so, so they did pay that. But aside from that, none of the other sanctions have been paid. And there was no bond posted. We were basically told, go see if you can collect. Okay, your time is up. Let me ask my colleagues whether either has additional questions of counsel. I think not. Thank you, counsel. Thank you for your time. All right. Mr. Reese, you have some rebuttal time. Thank you. Can I just cut right to the chase from my perspective? Taking your point about the alter ego as sort of a given, what I'm understanding is what happened is, or the claim of what happened is that your individual client took money from the corporation, which would be the defendant, and fraudulently conveyed it in a different way so they couldn't collect. What's your response to that? Well, a couple of things. We get to basic property law. You can't convey what you don't own. And so Hayes Management. A lot of people do. And then it becomes fraudulent. And we see it a lot, so what can I say? Okay. All right. So Hayes Management never, well, two components to this transaction, okay? There was the $100,000 that was the consideration for the hard assets, the goodwill of the corporation, Hayes Management, to Hayes Tax. All right. There was that one. I think the one that really got their attention was the former. That one is owned by your individual client, right? Your individual client, Chris Hayes, owns that other entity. He does. That's correct. He owns all these entities. He does. Okay. Well, not Hayes Tax. That's a different matter. Who owns that? A couple of former employees of Hayes Tax that decided to start up their corporation. He just gave it to them? No. There's a contract whereby they're paying it, by the way, in installments. There was no draining of assets to the tune of $400,000 here. Where is that money going? It's being repaid from Hayes Tax to Hayes Management. I'm sorry, from Hayes Tax to Chris Hayes. That money is with Chris Hayes, but it originally came from one of the defendants, right? The $100,000 was for the consideration between Hayes Management and Hayes Tax for what that entity sold to Hayes Tax. How much of that has been paid? I don't know. I know that it's being paid in installments. The $400,000 for Chris Hayes' personal goodwill is being paid in installments as well. But the $400,000 was never part of Hayes Management. It was always Chris's. That's the consideration they came up with for Chris to transfer it to Hayes Tax, and there's some consideration going between those two. But he didn't drain half a million from Hayes Management. You can understand. You're a smart lawyer. Sure. You can understand why this smells bad. Yes, I can understand that. I can understand that. And you can understand why your opponent and Judge Windmill would say, hey, wait a minute. This doesn't smell good. This looks like a fraudulent transfer. I think when you take a superficial look at it, I can understand where a person could have that perception. If you look at it more deeply and remember the basic property law principles, who owns what, then it makes sense. But in the end, with the sanctions order, it doesn't matter, does it? If the sanctions order stands. Well, if the sanctions order stands, it doesn't matter because all of these defendants are within the litigation. They have been pledged. So they'll be able to attach wherever those are if that's what stands. Your time is up. Let me ask my colleagues whether they have additional questions. We appreciate your briefs, your argument. I know you have a lot more to say, but unfortunately, that's the nature of our process here. So thank you both for your argument. The case just argued is submitted. Thank you. Thank you very much.
judges: SMITH, VANDYKE, Stinson